UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------
JENNIFER FELTENSTEIN and RICHARD FELTENSTEIN,

                                  Plaintiffs,                      14-CV-7494 (CS)

                - against -                            **OPINION AND ORDER**

CITY SCHOOL DISTRICT OF NEW ROCHELLE,

                                  Defendant.
-------------------------------------------------------------------------
CITY SCHOOL DISTRICT OF NEW ROCHELLE,

                                  Third-Party Plaintiff,

                - against -

NEW ROCHELLE FIRE DEPARTMENT,

                                  Third-Party Defendant.
-------------------------------------------------------------------------

Appearances:

Michael A. Miranda
Richard B. Epstein
Miranda Sambursky Slone Skarlin Verveniotis LLP
Mineola, New York
*Counsel for Third-Party Plaintiff*

Peter Meisels
Joanna M. Topping
Alison Holubis
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
White Plains, New York
*Counsel for Third-Party Defendant*

Seibel, J.

      Before the Court is Third-Party Defendant New Rochelle Fire Department's motion to dismiss the Amended Third-Party Complaint ("TPC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and vacate the Order granting Third-Party Plaintiff leave to file the

1

TPC.  (Doc. 29.)  For the reasons stated below, Third-Party Defendant's motion is GRANTED IN PART.

## I. Background

The following facts (although not the conclusions) from the TPC, (Doc. 28), and Plaintiff's Complaint ("Cplt."), (Doc. 1), are assumed true for the purposes of this motion.  The Plaintiff in the underlying action, Jennifer Feltenstein, suffers from cerebral palsy and is wheelchair-bound.  (Cplt. ¶¶ 1, 11.)  Jennifer attended New Rochelle High School (the "High School" or "School"), located within the City School District of New Rochelle (the "School District" or "District"), from September 2009 through June 2013.  (*Id.* ¶ 10.)  According to the underlying Complaint, on January 31, 2013, at approximately 9:07 a.m., Jennifer was on the third floor of the School when someone "heard a loud noise and saw a manhole cover lifted off the ground," prompting them to contact the New Rochelle Fire Department (the "Fire Department").  (*Id.* ¶ 59.)  Around 9:12 a.m., the Fire Department arrived at the School and found a "smoke condition in the electrical room and the odor of smoke coming from a vault grate by the outside sidewalk," which led to the triggering of the fire alarm, and the broadcasting of evacuation instructions over the School's P.A. system by the School's vice principal.  (*Id.* ¶ 60.)  The non-disabled students were evacuated, but, because the School's elevators shut down when the emergency alarm is triggered, some disabled students who were not on floors with wheelchair-accessible means of egress, including Jennifer, remained inside the School, unable to access an exit.  (*Id.* ¶¶ 16, 46, 61-62, 64-65.)  As a result, Jennifer and her aide proceeded to the third floor library where they were met by a security officer who was in radio contact with School officials outside the building.  (*Id.* ¶ 65.)  The School's Director of Security radioed the vice principal to inform him that disabled students were stranded inside the School.  (*Id.* ¶ 69.)

The vice principal later claimed that the Fire Department instructed him not to evacuate disabled students, (*id. ¶* 70), but, according to Plaintiffs, the Fire Department denies that it was ever notified that disabled students were in the building, or that it gave instructions not to evacuate the disabled students, (*id.* ¶ 71).  Approximately five to seven minutes later, Jennifer received instructions to move to another room on the third floor, and to remain there until the "all clear" signal was given, which she did.  (*Id.* ¶¶ 65-66.)

Insofar as the present motion is concerned, the School District alleges that, upon the Fire Department's arrival at the School on the morning of January 31, 2013, District representatives informed the first responders that mobility-impaired students remained inside.  (TPC ¶ 15.)  The Fire Department proceeded to instruct School personnel to evacuate the building, but determined that the situation did not require the evacuation of non-ambulatory students.  (*Id.* ¶¶ 20-21.)  School officials relayed these instructions, via walkie-talkie, to Jennifer, who remained inside the building until the emergency was resolved at approximately 9:37 a.m.  (*Id.* ¶¶ 23, 26.)

As a result of the events of January 31, 2013 (and other incidents not relevant to the present motion), Plaintiff and her father, a co-Plaintiff, filed the underlying action on September 16, 2014 against the School District, alleging discrimination in violation of Title II of the Americans with Disabilities Act (the "ADA") and Section 504 of the Rehabilitation Act.  (*See* Doc. 1.)  The Plaintiffs raised no state law claims.  On November 10, 2014, the School District filed an Answer, (Doc. 6), and with leave of this Court, (Doc. 14), on May 15, 2015, filed the TPC against the Fire Department, (Doc. 28).  The School District seeks indemnification and contribution from Third-Party Defendant Fire Department in the event the School District is found liable in the underlying action.  (TPC ¶¶ 39-40, 46-47.)  The City of New Rochelle

(improperly named in the present action as the Fire Department)[1] now moves to dismiss the TPC pursuant to Federal Rule of Civil Procedure 12(b)(6). (D's Mem. 2.)[2]

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not

---

[1] Third-Party Defendants correctly point out that the Fire Department cannot be sued because it is an administrative arm of a municipality and, under New York law, does not have a legal identity separate and apart from the municipality. *See Robischung-Walsh v. Nassau Cty. Police Dep't*, 699 F. Supp. 2d 563, 565 (E.D.N.Y. 2010), *aff'd*, 421 F. App'x 38 (2d Cir. 2011); *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002). Rather than move for dismissal of this action on this ground, Third-Party Defendant has proceeded as if the City of New Rochelle was the named third-party defendant, (Memorandum of law in Support of Third-Party Defendant's Motion to Vacate Order and Dismiss the Amended Third-Party Complaint ("D's Mem."), (Doc. 31), 1, n.1), to which the School District seems to have acquiesced, (Memorandum of Law of Defendant/Third-Party Plaintiff's in Opposition to Third-Party Defendant New Rochelle Fire Department's Motion to Dismiss the Amended Third-Party Complaint ("P's Mem."), (Doc. 36), 2 n.1). Accordingly, I construe the School District's complaint to allege claims against the City of New Rochelle (the "City"), not the Fire Department.

[2] Plaintiffs have not submitted briefing with respect to the present motion.

entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).[3]

## III. Discussion

The City argues that the TPC must be dismissed because: (1) neither federal nor New York law provide a right to indemnity or contribution for actions pursuant to the ADA or Rehabilitation Act; and (2) even if the School District could recover via indemnity or contribution, the City is entitled to governmental immunity. (D's Mem. 2.) For its part, the School District: (1) states that it seeks indemnification and contribution only under New York state law, and argues that such relief is indeed available even where, as here, the underlying action is based entirely on federal claims with broad remedial schemes, (*see* P's Mem. 4); and (2) contends that the City is not entitled to immunity because it owed Jennifer a special duty of care, (*id.* 11).

The City is correct that no right to indemnification or contribution exists under New York common law for actions brought under the ADA or Rehabilitation Act. *Access 4 All, Inc. v.*

---

[3] The School District erroneously cites to a case that relies on the antiquated "no set of facts" pleading standard articulated in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), *overruled by Twombly*, 550 U.S. at 563. (D's Mem. 4.) As the Supreme Court stated in *Twombly*, the "no set of facts standard" "has earned its retirement . . . [and] is best forgotten as an incomplete, negative gloss on an accepted pleading standard . . . ." *Twombly*, 550 U.S. at 563. The Court is surprised that the School District's experienced counsel are citing a standard that is eight years out of date. Needless to say, going forward they should cite the current legal standard for evaluating Rule 12(b)(6) motions set forth in *Twombly* and *Iqbal*.

*Trump Int'l Hotel & Tower Condo.*, No. 04-CV-7497, 2007 WL 633951 (S.D.N.Y. Feb. 26, 2007), held, in an analogous situation, that neither federal nor New York common law provides a right to indemnity under the ADA. *Id.* at *6-7.[4] This Court sees no reason to quarrel with – and the School District provides no authority to contradict – *Access 4 All*'s holding.  There, the third-party plaintiff condominium owner sought indemnification from the condominium sponsor and architects.  As in the case at bar, the owner argued that a common law right to indemnity existed in actions brought under the ADA.  While, unlike here, the primary plaintiff sought only equitable relief, the court found, more generally, that "even if Plaintiff had authority that [a right to indemnity] might exist in New York common law [as the court seemed to assume it would where, as here, the primary plaintiff was seeking damages], it would raise the specter that *any* state-law right to indemnity would be pre-empted by the extensive remedial scheme of the ADA." *Id.* at *7 (emphasis added).

This Court agrees with *Access 4 All*'s suggestion that the ADA preempts state law indemnification and contribution, and therefore aligns itself with the considerable weight of authority finding that the purpose of the ADA[5] – the remedial scheme for which does not include provisions for indemnification and contribution – would be frustrated by the availability of such remedies under state law, because it would contravene Congress' intent to hold accountable all who actually violate the terms of the statute. *See Equal Rights Ctr. v. Niles Bolton Assocs.*, 602

---

[4] While some cases cited herein address only claims for indemnity, or only claims for contribution, it is fair to say that the courts' reasoning applies equally to both types of claims, and, accordingly, where my analysis might refer only to "contribution," or only to "indemnification," my reasoning applies equally to both concepts. *See Access 4 All*, 2007 WL 633951, at *7 n.10.  The same goes for my discussion of the ADA and Rehabilitation Act, as both statutes are "very similar" in offering comparable protection from discrimination for practically identical disabilities. *See Francis v. City of Meriden*, 129 F.3d 281, 283 (2d Cir. 1997).

[5] The principal purpose of the ADA is "(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; [and] (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b).

F.3d 597, 602 (4th Cir. 2010) (state law indemnification claim preempted by ADA's remedial scheme because non-delegable duties imposed by "ADA would be undermined by allowing a claim for indemnity."); *Indep. Living Ctr. of S. Cal. v. City of L.A.*, 973 F. Supp. 2d 1139, 1160 (C.D. Cal. 2013) (indemnification and contribution claims under state common law preempted by ADA and Rehabilitation Act's remedial scheme allowing discrimination victims to pursue legal action against discriminators). This is because the defendant in the primary action – who allegedly discriminated in violation of the ADA – is "clearly not among the class which the statute is intended to protect, but rather [is] the part[y] whose conduct the statute was intended to regulate." *United States v. Quality Built Const., Inc.*, 309 F. Supp. 2d 767, 778 (E.D.N.C. 2003); *see also United States v. Murphy Dev., LLC*, No. 08-CV-960, 2009 WL 3614829, at *2 (M.D. Tenn. Oct. 27, 2009) (state law claims for indemnity and/or contribution "would frustrate the achievement of Congress' purposes in adopting" the ADA); *Equal Rights Ctr. v. Archstone Smith Trust*, 603 F. Supp. 2d 814, 824 (D. Md. 2009) (action for indemnification under state law would frustrate basic enforcement of ADA).[6]

Indeed, comprehensive remedial schemes of the sort found in the ADA "strongly counsel[ ] against judicially engrafting additional remedies." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 144 (2d Cir. 1999); *see Archstone*, 603 F. Supp. 2d at 822 ("[T]he unmistakable thrust of Supreme Court precedent is that Congress' selection (and non-selection) of remedies in comprehensive remedial federal statutes, especially anti-discrimination statutes, is not a proper subject with which federal or state courts ought to tinker."), *aff'd sub nom.*, *Niles Bolton*, 602

---

[6] In light of this wealth of authority that indemnification or contribution under state law is barred in cases in which the ADA or Rehabilitation Act form the basis of the underlying action, it is hard to see how the School District could maintain an independent action for indemnity or contribution in New York state court, because any such claims would be wholly derivative of the underlying ADA and Rehabilitation Act claims in the primary action.

F.3d 597; *Herman*, 172 F.3d at 143-44 (finding no right to contribution or indemnification under FLSA because statute has no provision for such relief, and third-party plaintiff was not member of class Congress intended to protect); *cf. Nw. Airlines, Inc. v. Transp. Workers Union of Am.*, 451 U.S. 77, 97 (1981) (analyzing Title VII and holding that the "judiciary may not, in the face of such comprehensive legislative schemes, fashion new remedies that might upset carefully considered legislative programs.").[7]

In addition to citing preemption, the *Access 4 All* court further noted that "federal courts accept state-law rights of contribution or indemnity only where state law provides the rule of decision." 2007 WL 633951, at *7. Where, as in the present case, the underlying claim was brought under the ADA, "federal law provides the rule of decision, and . . . there is no federal common-law right to indemnification under the ADA." *Id.*; *see also Zino Davidoff S.A. v. Selective Distrib. Int'l Inc.*, No. 07-CV-10326, 2013 WL 1245974, at *4 (S.D.N.Y. Mar. 8, 2013) ("Whether a defendant who incurs liability under a federal statute may pursue either contribution or indemnification is a question of federal law.") (citing cases), *report and recommendation adopted*, No. 07-CV-10326, 2013 WL 1234816 (S.D.N.Y. Mar. 27, 2013).[8]

---

[7] "The ADA's enforcement mechanisms were modeled after and are identical to those of Title VII." *Rodriguez v. Gary Plastic Packaging Corp.*, No. 95-CV-4900, 1997 WL 16665, at *3 (S.D.N.Y. Jan. 16, 1997).

[8] The School District argues to the contrary, and cites two unconvincing cases for the proposition that "the rule of decision in a third-party indemnification and/or contribution action can be found in state law." (P's Mem. 6.) The first case, *State of N.Y. v. SCA Servs. Inc.*, No. 83-CV-6402, 1993 WL 355348 (S.D.N.Y. Sept. 8, 1993), involved a federal claim pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") where the third-party plaintiff had a contract with third-party defendants that included an indemnification provision. *Id.* at *1. Not only did the court note that the indemnification claims arose out of the contract between the parties, but the court specified that "state law provides the rule of decision for construction of indemnification agreements in CERCLA cases." *Id.* at *2. The court's deliberate language indicates that the rule of that case ought not to be extended beyond CERCLA matters with contractually based indemnification claims. Similarly, *First Fed. Sav. & Loan Ass'n of Pittsburgh v. Oppenheim, Appel, Dixon & Co.*, 631 F. Supp. 1029 (S.D.N.Y. 1986), dealt with federal securities law, and applied New York state law to determine the effect of a settlement agreement on claims for third-party contribution. The court's decision to adopt state law as the rule of decision was likewise limited to cases relating to "contribution claims against a settling tortfeasor under the federal securities laws." *Id.* at 1036. In sum, both cases involve different statutes and interpretations of an agreement providing for contribution or indemnification, rendering those cases inapposite to the present matter. Accordingly,

The School District provides no authority to persuade this Court otherwise. It instead cites to readily distinguishable case law that either: (1) recognized a right to indemnification or contribution in ADA or Rehabilitation Act cases pursuant to a narrow exception involving a landlord-tenant relationship; or (2) were brought pursuant to, and analyzed under, federal statutes other than the ADA or Rehabilitation Act with distinguishable remedial schemes and legislative purposes. The former string of cases is inapposite because they merely recognize a "unique" landlord-tenant exception to the rule that indemnity or contribution is unavailable in ADA lawsuits, s*ee Niles Bolton*, 602 F.3d at 602 n.1 (special landlord-tenant relationship recognized by 28 C.F.R. § 36.201(b) is "unique" and "does not impact the relationships" between other parties subject to ADA), a factor not present in the present case.[9]

With respect to the latter line of cases, the School District relies heavily upon *McLaughlin v. Biasucci*, 688 F. Supp. 965 (S.D.N.Y. 1988), for the proposition that a right to contribution can exist between a defendant and an impleaded third party where the underlying cause of action is a federal statute with a robust remedial scheme. (P's Mem. 4-5.) *McLaughlin* is unhelpful to the School District. *McLaughlin*, in fact, found that a right to contribution *did not* exist for a proposed third-party plaintiff, and rejected as incorrectly decided a prior case that had

---

in the absence of authority holding otherwise, and for the reasons stated herein and in *Access 4 All*, this Court finds that federal law provides the rule of decision with respect to indemnity or contribution claims under the ADA or Rehabilitation Act.

[9] The only two federal ADA or Rehabilitation Act cases cited by the School District (apart from *PGA Tour, Inc. v. Martin*, 532 U.S. 661 (2001), which it cites solely to recite the purposes of the ADA, (P's Mem. 7-8)) – *Brown v. Brooklyn Indus. LLC*, 2015 WL 1726489 (S.D.N.Y. Apr. 15, 2015), and *Bowman v. Cudge Realty, LLC*, No. 12-CV-9296, 2013 WL 3146766 (S.D.N.Y. June 19, 2013) – found that a right to contribution can exist in third party actions between landlord/property owners and their tenants under an exception expressly recognized by the ADA's accompanying regulations. *See* 28 C.F.R. § 36.201(b). In *Brown*, the exception permitted the third-party plaintiff landlord to seek indemnity from its tenant where the underlying claims were brought under the ADA and state and local laws. The *Brown* court nonetheless observed that outside the landlord-tenant relationship, courts have held that "a state law indemnification claim [is] preempted by virtue of being in conflict with the ADA." *Brown*, 2015 WL 1726489, at *2. Likewise, *Bowman* simply recognized the same landlord-tenant exception, *Bowman*, 2013 WL 3146766, at *2, and provides no meaningful insight to the present case.

permitted such a claim. *Id.* at 968. Further, the underlying action in *McLaughlin* was commenced pursuant to the Employee Retirement Income Security Act ("ERISA"), *id.* at 966, and the third-party complaint the court ultimately allowed asserted a malpractice claim which, unlike the third-party claims in the present case, was "legally independent of the [primary plaintiff's] claim and could be asserted regardless of the [primary plaintiff's] success or failure on the original complaint," *id.* at 968-69.[10]

In light of this disposition, I need not consider the City's other arguments in support of their motion to dismiss (although I tend to think that the City has the better of the immunity argument). Further, because the TPC is dismissed, the Court views as unnecessary the City's request to vacate the Order granting the School District leave to file the TPC.

In short, the School District may, to the extent appropriate, raise the Fire Department's alleged instructions as part of its defense, but it may not seek indemnity or contribution from the Fire Department.

---

[10] The School District attempts to analogize *McLaughlin* to the case at bar because, here, the School District "relied upon the advice of experts in the field," (P's Mem. 5), and in *McLaughlin*, the third-party plaintiff client relied on third-party defendant lawyer's advice. That factual similarity, however, appears to be of little legal consequence. In *Access 4 All*, the court construed the third-party complaint to allege that third-party plaintiff condominium owner relied upon third-party defendants' certification that the condominium construction would be done in compliance with ADA regulations. 2007 WL 633951, at *1 n.3. But, the *Access 4 All* analysis regarding whether indemnification was available under New York common law did not include consideration of this factor. Moreover, whatever factual similarity may arguably exist between this case and *McLaughlin* – which this Court does not find nearly as analogous as the School District does – does not change the nature of the relevant *claims*: *McLaughlin* did not allow a contribution claim, only a malpractice claim, so it does not aid the School District here.

Moreover, the other cases cited by the School District that were brought under federal statutes other than the ADA and Rehabilitation Act are similarly unavailing. For example, both *Wilson v. Long Island R.R.*, 96 F.R.D. 56 (S.D.N.Y. 1982), and *Ross v. Penn Cent. Transp. Co.*, 433 F. Supp. 306 (W.D.N.Y. 1977), involved cases brought pursuant to the Federal Employees' Liability Act for which – unlike the ADA – the Supreme Court has recognized a right to contribution or indemnity. *See Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 162-63 (2003).

## IV. Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). It is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

In a letter dated April 13, 2015, the City identified several deficiencies in the School District's original third-party complaint, (Doc. 25), which presaged the arguments made in their motion to dismiss. At the April 21, 2015 pre-motion conference, the parties and the Court further discussed these deficiencies, concentrating on the issue of whether indemnification or contribution is available under state law where the underlying claims are brought pursuant to the ADA and Rehabilitation Act. Indeed, the Court advised that the School District should "dig a little more" to find cases supporting its argument that indemnification or contribution is available under state law in ADA or Rehabilitation Act cases. The School District's failure to fix deficiencies in its previous pleadings, after being provided full notice of the deficiencies, is alone sufficient ground to deny leave to amend *sua sponte*. *See In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and

11

"plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted); *see also Ruotolo*, 514 F.3d at 191 (affirming denial of leave to amend "given the previous opportunities to amend"). Further, the School District has not requested leave to file a second amended complaint or suggested that it is in possession of facts that would cure the deficiencies identified in this opinion. A plaintiff need not be given leave to amend if it fails to specify how amendment would cure the pleading deficiencies in its complaint. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014). Accordingly, I decline to grant the Third-Party Plaintiff leave to amend *sua sponte.*

## V. Conclusion

For the reasons set forth above, the City's motion to dismiss the TPC is GRANTED and its request to vacate the Order granting the School District leave to file the TPC is DENIED. The Clerk of Court is respectfully directed to terminate the pending motion, (Doc. 29), and terminate Third-Party Defendant New Rochelle Fire Department.[11]

**SO ORDERED.**

Dated: December 18, 2015
 White Plains, New York

*Cathy Seibel*
CATHY SEIBEL, U.S.D.J.

---

[11] The New Rochelle Fire Department is also erroneously listed on the docket as an "ADR Provider." That listing should be deleted.